No. 26-90009

IN THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

---

MAGGIE MONTES AND BREONA HORNE,
*Plaintiffs-Appellees*,

V.

BENELUX CORPORATION, doing business as PALAZIO MEN'S CLUB,
ANTHANASES STAMATOPOULOS, and MICHAEL MEALEY,
*Defendants-Appellants*

---

Appeal from the United States District Court for the Western District of Texas, Austin Division
No. 1:24-cv-00276-RP
The Honorable Judge Robert Pitman, Presiding

---

**PLAINTIFFS-APPLELLEES' RESPONSE TO DEFENDATS-APPELLANTS' PETITION FOR PERMISSION TO APPEAL CLASS CERTIFICATION ORDER UNDER RULE 23(f)**

---

Caitlin Boehne
Ryan Estes
Austin Kaplan
KAPLAN LAW FIRM
2901 Bee Cave Road, Suite G
Austin, Texas 78746
Telephone: (512) 814-7348
*Counsel for Plaintiffs-Appellees*

No. 26-90009

IN THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

---

MAGGIE MONTES AND BREONA HORNE,
*Respondents-Plaintiffs,*

V.

BENELUX CORPORATION, doing business as PALAZIO MEN'S CLUB,
ANTHANASES STAMATOPOULOS, and MICHAEL MEALEY,
*Petitioners-Defendants.*

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**PETITIONERS-DEFENDANTS BENELUX CORPORATION D/B/A PALAZIO MEN'S CLUB, ANTHANASES "TOM" STAMATOPOULOS, AND MICHAEL MEALEY**:

Petitioners-Defendants are Benelux Corporation d/b/a Palazio Men's Club, Anthanases "Tom" Stamatopoulos, and Michael Mealey.

**ATTORNEYS FOR PETITIONERS:**

William X. King
Emily C. Freeman

MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Tel.: (713) 221-3840
Fax: (713) 337-8850
william.king@mhllp.com
emily.freeman@mhllp.com

**RESPONDENTS MAGGIE MONTES AND BREONA HORNE:**

***Respondents-Plaintiffs:***

Plaintiffs-Appellees are Maggie Montes and Breona Horne, individually and on behalf of a putative class of current and former waitstaff at Palazio Men's Club, for whom Benelux furnished an information return, who allege that Benelux willfully filed fraudulent information returns overstating their tip income in violation of 26 U.S.C. § 7434.

**ATTORNEYS FOR RESPONDENTS AND THE PUTATIVE CLASS:**

Ryan Estes
Caitlin Boehne
Austin Kaplan
KAPLAN LAW FIRM
2901 Bee Cave Road, Suite G
Austin, Texas 78746
Phone: (512) 814-7348
Email: restes@kaplanlawatx.com
caitlin@kaplanlawatx.com
akaplan@kaplanlawatx.com

/s/ Ryan O. Estes
Counsel for Plaintiffs-Appellees

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................i

TABLE OF CONTENTS .................... iii

TABLE OF AUTHORITIES ....................v

INTRODUCTION....................1

STANDARD OF REVIEW....................2

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND....................2

ARGUMENT ....................4

I. The District Court's Proper Application of Rule 23's Elements to Plaintiffs' Tax Fraud Claims Against an Employer Who Knew It Issued False W-2s Presents No Basis for Interlocutory Review. ....................4

a. Petitioners Fail to Show the District Court's Decision Turns on a Novel Question of Law....................4

b. The District Court, Unlike Defendants, Correctly Gave Meaning to the Plain Text of §7434, Which Lends Itself to Class Treatment....................6

c. Petitioners Fail to Meaningfully Challenge the District Court's Analysis of Rule 23's Requirements. ....................8

i. The District Court Properly Identified a Common Question of Law Susceptible to Class-Wide Resolution. ....................9

ii. The District Court Correctly Found Benelux's Uniform Policy is the Predominant Issue. ....................10

iii. Benelux's Argument Mischaracterizes § 7434 Liability and Conflates the Merits with Rule 23 Requirements. ....................11

iv. The District Court Did Not Abuse its Discretion in Concluding that Damages Issues Do Not Preclude Certification. ....................12

d. Petitioners Failed to Show the District Court's Decision Granting Class Certification Would Be Case-Dispositive....................16

II. Petitioners Forfeited Several of Their Unavailing Arguments by Failing to Timely Raise Them Below. ....................17

a. Plaintiffs Have Adequately Demonstrated Article III Standing. ..........18

b. The Plain Language of §7434 Permits Actual Damages, and Offers a Remedy for Overtaxation. ....................20

CONCLUSION....................21

CERTIFICATE OF SERVICE....................22

CERTIFICATE OF COMPLIANCE....................23

APPENDIX....................24

# TABLE OF AUTHORITIES

**<u>Cases</u>** **<u>Page(s)</u>**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ........ 12

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
242 F.3d 290 (5th Cir. 2001) ........ 13

*CEATS, Inc. v. TicketNetwork, Inc.*,
71 F.4th 314 (5th Cir. 2023) ........ 17

*Chavez v. Plan Benefit Servs., Inc.*,
108 F.4th 297 (5th Cir. 2024) ........ 15

*Cruson v. Jackson Nat'l Life Ins. Co.*,
954 F.3d 240 (5th Cir. 2020) ........ 10

*Eisele v. Home Depot U.S., Inc.*, No. 3:20-cv-1740-AB,
2026 LX 189106 (D. Or. Mar. 17, 2026) ........ 20, 21

*First United Pentecostal Church v. Church Mut. Ins. Co.*,
119 F.4th 417 (5th Cir. 2024) ........ 17

*Ibe v. Jones*,
836 F.3d 516 (5th Cir. 2016) ........ 13, 14, 15

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ........ 12, 13, 15, 16

*Madison v. Chalmette*,
637 F.3d 551 (5th Cir. 2011) ........ 15

*Microsoft Corp. v. Baker*,
582 U.S. 32 (2017) ........ 2

*Prantil v. Arkema, Inc.*,
986 F.3d 570 (5th Cir. 2021) ........ 13, 14, 15

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) .......... 17

*Schmelzer v. Animal Wellness Ctr. of Monee, LLC*,
No. 18-cv-01253, 2022 U.S. Dist. LEXIS 136044 (N.D. Ill. Aug. 1, 2022) .......... 18

*Seeligson v. Devon Energy Prod. Co., L.P.*,
804 Fed. Appx. 304 (5th Cir. 2020) .......... 2, 16, 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .......... 10, 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 6, 10

*Zimmerman v. City of Austin, Tex.*,
881 F.3d 378 (5th Cir. 2018) .......... 19

**Statutes**

26 U.S.C. § 6053(a) .......... 9

26 U.S.C. § 7422 .......... 17, 20

26 U.S.C. § 7434 .......... *passim*

**Rules**

Fed. R. App. P. 23(f) .......... *passim*

Fed. R. Civ. P. 23(b)(3) .......... 10, 12

**Other Authorities**

Charles Alan Wright & Arthur Miller, 7B Fed. Prac. & Proc. Civ. § 1802.2 (3d ed.).........2

7AA C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. § 1778 (3d ed. 2005).............12

## INTRODUCTION

Defendant Benelux Corporation d/b/a Palazio Men's Club ("Benelux") seeks leave to appeal an order certifying a class of current and former waitstaff whose tip income was systematically overreported to the Internal Revenue Service on annual Form W-2s and 1099s. 26 U.S.C. § 7434 provides a civil remedy to those who receive fraudulently filed information returns. The district court correctly found that Benelux's documented, company-wide practice of reporting gross—rather than net—tips on every class member's Form W-2 and 1099 presents a common question of law and fact amenable to class-wide resolution.

Benelux fails to meet the high bar required to justify this Court's interlocutory review. It relies on arguments that are unsupported by any caselaw and clearly concedes that common issues predominate. Benelux's petition focuses on the merits of Plaintiffs' claims rather than whether a class should be certified. Additionally, Benelux untimely raises arguments that it did not bring in the district court. The district court carefully followed established Fifth Circuit precedent in certifying a narrower class than Plaintiffs sought, and this case presents no novel question of law relating to class certification. Accordingly, this Court should deny Benelux's Petition.[1]

[1] Plaintiffs' Supplemental Appendix is cited herein as "Supp. App'x" and, like Defendant Benelux's (referred to as "Benelux App'x"), includes tabs with separately paginated documents

## STANDARD OF REVIEW

Rule 23(f) appeals are not appeals of right. Appellate courts have discretion to allow Rule 23(f) appeals, but that discretion "should be exercised with restraint." Charles Alan Wright & Arthur Miller, 7B Fed. Prac. & Proc. Civ. § 1802.2, Appealability of Class Certification under Rule 23(f) (3d ed.). It is "akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari," Fed. R. Civ. P. 23(f) Advisory Committee Notes (1998) and is best exercised "when the certification decision turns on a novel or unsettled question of law [or] is likely dispositive of the litigation." *Seeligson v. Devon Energy Prod. Co., L.P.*, 804 Fed. Appx. 304, 305 (5th Cir. 2020) (citing *Microsoft Corp. v. Baker*, 582 U.S. 32 (2017)) (internal quotation marks omitted).

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Maggie Montes and Breona Horne, individually and on behalf of all others similarly situated ("Plaintiffs") briefly describe facts relating to the district court's certification order, which were presented more extensively in their Motion for Class Certification. (Supp. Appendix Tab 1, pp. 3–6).

Plaintiffs worked as waitstaff at Benelux Men's Club earning $2.13 hourly plus tips. (Supp. App'x Tab 1 at Ex. A, 38:17–40:4 and 105:20–24). Benelux had a

---

from the record in the district court. Defendants' Petition for Permission to Appeal (Doc. 2 in this Court) is referred to as "Petition."

uniform practice of requiring its waitstaff to "tip out" managers, bartenders, barbacks, and other staff at the end of each shift. (Supp. App'x Tab 1 at Ex. A, 200:16–201:7; at Ex. C, 191:7–192:3; at Ex. D, 177:4–8; Exs. E and F at ¶¶ 7–8). However, when Benelux reported tip income on Plaintiffs' and other waitstaffs' paystubs and, later, on annual Form W-2s and 1099s, it refused to deduct the tip-out amounts that Benelux required them to pay to managers, bartenders, barbacks, and other staff. (*Id.*). As a result, Plaintiffs and waitstaff were taxed on income they did not receive.

No party disputes that Defendant Benelux issued W-2s and 1099s to Plaintiffs and filed those forms with the IRS. Defendant Benelux's corporate representative Michael Mealey conceded at the Rule 30(b)(6) deposition that all W-2s issued to waitstaff (including Plaintiffs) before 2025 were inaccurate because of Benelux's decision to not account for mandatory tip-outs that Benelux required its waitstaff to make. (Supp. App'x Tab 1 at Ex. A, 200:16–201:7; 249:9–250:5 ("Q. [is it] Benelux's testimony that the W2s that were issued for wait staff in years before 2025 . . . are inaccurate? A. Yes.")). The corporate representative also conceded that this change to count waitstaff's tip outs in tax documents given to waitstaff going forward was made as a result of this lawsuit. (Supp. App'x Tab 1 at Ex. A, 248:1–249:8). The corporate representative went on to admit that it was a "mistake on our

part" for not changing the policies in place at the club since its founding. (Supp. App'x Tab 1 at Ex. A, 249:9–250:5).

Defendant Benelux knew it required its waitstaff to give portions of their tips to other employees and chose not to track those mandatory tip outs. (Supp. App'x Tab 1 at Ex. A, 200:16–201:7, 249:9–250:5; at Ex. C, 191:7-192:3; at Ex. D, 177:4–8; Exs. E and F at ¶¶ 7–8). Benelux clearly had a way to track these tip outs because it changed its policy in early 2025 to track the mandatory tip outs to ensure that Benelux put accurate numbers in its waitstaffs' W-2s and 1099s. (Supp. App'x Tab 1 at Ex. A, 248:1–249:8).

In a 37-page ruling, the majority of which focused on the class certification question, the district court granted class certification for the tax fraud claim, narrowed Plaintiffs' proposed class definition slightly, and declined to certify a class to pursue breach of contract claims. (*See generally*, Benelux App'x Tab A). In that same ruling, the district court denied Defendants' motion for summary judgment on the tax fraud claims. *Id.* Defendants' request for permission to appeal followed.

## ARGUMENT

### I. The District Court's Proper Application of Rule 23's Elements to Plaintiffs' Tax Fraud Claims Against an Employer Who Knew It Issued False W-2s Presents No Basis for Interlocutory Review.

#### a. Petitioners Fail to Show the District Court's Decision Turns on a Novel Question of Law.

Defendants' petition latches on to a single word—"unsettled"—used once in the district court's well-reasoned opinion to show this case merits interlocutory review. However, the district court's use of that word was a euphemism for Defendants' concocting a question where there was none. (Benelux App'x Tab A at p. 8). This word is also not found in the portion of the opinion analyzing class certification, but rather in the portion analyzing Plaintiffs' motion for summary judgment on §7434. It properly considered and rejected that argument as a bar to class certification and its decision granting certification did not, in fact, turn on a novel issue of law.

Defendants' assertion that §7434 cannot be read outside of the requirements of other sections of the IRC—and specifically that Defendant can evade liability under §7434 if Plaintiffs did not furnish written statements of their tipped income—has no basis in caselaw whatsoever. Defendants do not cite a single case to support this interpretation of §7434, let alone that addresses this purported issue one way or another. Moreover, this "novel" reading of §7434 would permit an employer to feign ignorance of its own policies to evade liability under the statute—an outcome no court has supported, and which Congress surely did not intend. A half-baked legal theory invented out of thin air is not a "novel or unsettled question of law" warranting interlocutory review under Rule 23(f).

The crux of Benelux's Petition is that the individual tip-reporting compliance of each class member *may* affect the employer's § 7434 liability, making the class unmanageable. As a threshold matter, this overlooks the fact that Benelux in fact had the information it needed to correctly report Plaintiffs' tips at every juncture, it simply chose not to. But that question, even if contested, goes to the merits of the § 7434 claim—not to whether common issues predominate over individual ones. The district court correctly determined that Benelux's uniform tip sharing and reporting methodology is the predominant issue affecting every class member's claim in the same way. This analysis confirms that Benelux's objection is one capable of being resolved on a class-wide basis "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### b. The District Court, Unlike Defendants, Correctly Gave Meaning to the Plain Text of §7434, Which Lends Itself to Class Treatment.

Section 7434 imposes liability on any person who "willfully files a fraudulent information return with respect to payments purported to be made to any other person." 26 U.S.C. § 7434(a). The statutory text is straightforward, and the district court correctly applied it. Defendants, by contrast, ignore it entirely.

Whether Benelux's policy—requiring waitstaff to share tips with managers and other staff while failing to deduct those tips from waitstaff's earnings on income tax forms—violates § 7434 is a question ripe for class-wide treatment because it turns on Benelux's conduct and state of mind, not on any individual plaintiff's

actions. Defendants attempt to defeat predominance by pointing to individualized pre- and post-issuance conduct among waitstaff, but that argument rests on a misreading of the statute. Section 7434 liability attaches the moment that a fraudulent information return is issued. What any individual waitstaff did—or did not do—before or after that issuance is simply irrelevant.

Benelux required waitstaff tip outs as a matter of employment policy—not individual practice. (Supp. App'x Tab 1 at Ex. A, 249:9–250:5, 113:8–12 (same payroll policy applies across all waitstaff), 222:14–23 (same tipping policy applies to all waitstaff)). It contemporaneously logged virtually all tips reported by waitstaff through its electronic point-of-sale system, giving it real-time knowledge of what waitstaff earned before tip-outs. (Supp. App'x Tab 2 at 7; *Id.* at Ex. A at 44:13–17, 230:3–7). Benelux also dictated the terms and amounts of those tip-outs, which managers and other staff expected as a regular component of their own compensation. (Supp. App'x Tab 2 at Ex. A, 149:19–23 (Plaintiff Horne tipped out managers 10%), 153:14–154:10 (Plaintiff Horne tipped about 30% total to bar staff and managers); *Id.* at Ex. B, 39:11–18 (Plaintiff Montes specifying tip-out percentages to bartenders and barbacks); 97:7–18 (specifying managers expected at least 10% of tips)). Despite possessing this information(or at least being fully capable of capturing it),Benelux made no effort to record the tip-outs it mandated,

and instead issued pay stubs and tax forms reflecting gross tip amounts without any corresponding deduction.

Defendants now feign ignorance of the precise amounts of the tip outs—but that posture is untenable. Benelux set the tip out policy. It supervised compliance. It benefited from the arrangement, which subsidized its managers' and other staff's earnings. Its failure to document information it possessed does not operate as a shield from liability. The situation is analogous to an employer receiving written tip-out statements from employees and then discarding them: possession of the information, and deliberate inaction in the face of it, cannot excuse the employer's failure to issue accurate returns. Indeed, Benelux's own conduct following the filing of this lawsuit speaks volumes: it now tracks waitstaff tip-outs—precisely the records it claims it could not maintain. (Supp. App'x Tab 1 at Ex. A, 248:1–249:8).

**c. Petitioners Fail to Meaningfully Challenge the District Court's Analysis of Rule 23's Requirements.**

The class theory here is simple and consistent: Benelux's corporate representative and long-time general manager Defendant Michael Mealey admitted that Benelux required its waitstaff to report tips through its electronic system; it required waitstaff to tip out managers and staff in set amounts; it possessed—and easily could have recorded—the information necessary to account for those tip-outs; but nonetheless issued information returns that overstated every waitstaff member's taxable income.

Each element of this claim is susceptible to common proof. The district court correctly understood that those questions must be answered for every class member in the same way regardless of how it ultimately resolves questions bearing on any given class member's recovery. Because of this, the district court found class treatment superior to individual suits.

Benelux's Petition effectively sidesteps the procedural posture of a Rule 23(f) appeal. It fails to identify any specific element of Rule 23 that the district court analyzed incorrectly as a matter of procedure, instead recycling the same merits arguments it made—and lost—below.

*i. The District Court Properly Identified a Common Question of Law Susceptible to Class-Wide Resolution.*

The district court correctly concluded that Benelux's liability turns primarily on Benelux's own conduct and uniform practices, not on each individual class member's compliance with 26 U.S.C. § 6053(a). That determination was not a failure of analysis as Benelux claims; it *was* the analysis.

The district court found that Benelux had an identifiable, uniform practice: reporting gross charge tips on Form W-2s and 1099s without deducting for tip-outs. Benelux's own corporate representative confirmed this methodology was applied consistently and acknowledged it resulted in inaccurate W2s. (Supp. App'x Tab 1 at Ex. A, 249:9–250:5, 113:8–12 (same payroll policy applies across all wait staff), 222:14–23 (same tipping policy applies to all wait staff)). The common question—

whether that uniform practice constitutes willful filing of fraudulent information returns under § 7434—is susceptible to a common answer. *See Wal-Mart Stores*, 564 U.S. at 350 (requiring "a common contention. . .capable of classwide resolution").

ii. *The District Court Correctly Found Benelux's Uniform Policy is the Predominant Issue.*

As discussed above, even accepting Benelux's reading of § 7434, the class still satisfies Rule 23(b)(3)'s predominance requirement. Predominance does not require that every element of the cause of action be provable through identical evidence—only that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "'[A]t the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence, or, conversely, whether the members. . .will need to present evidence that varies from member to member.'" *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 n.12 (5th Cir. 2020) (cleaned up). Here, the predominance question—whether Benelux's uniform tax reporting practice was willfully fraudulent—can be established through common evidence, including through the testimony of its corporate representative.

Benelux likewise attempts to elevate § 7434(e)'s mandatory "correct amount" finding to a class-defeating obstacle, but that argument overstates the burden the provision imposes and misreads its interaction with statutory damages. In a class

proceeding where liability is established on common grounds and statutory damages are elected, the "correct amount" finding need not be re-litigated from scratch for each class member. Benelux's own records—the same records it relied on to generate the fraudulent W-2s and 1099s—provide a common evidentiary baseline from which the overreported amount can be calculated for the class.

The cases Benelux cites for the proposition that § 7434(e) forecloses class treatment are inapposite default judgment rulings where proposed finding of the "correct amount" was not presented at all. They say nothing about the manageability of class-wide § 7434(e) findings in a contested proceeding with a developed factual record. And, at the class certification stage, Plaintiffs are not required to produce the "correct amount." Because the "correct amount" will necessarily flow from the question of damages (which, as discussed in Section I.c.iv., *infra*, are amenable to class-wide treatment), this "correct amount" component of §7434 is capable of class-wide treatment.

*iii. Benelux's Argument Mischaracterizes § 7434 Liability and Conflates the Merits with Rule 23 Requirements.*

Benelux's argues at length that an employer's § 7434 duty is entirely derivative of what employees report to it, such that each class member's individual reporting is a threshold issue defeating predominance. Aside from being inapposite based on the factual record, that argument is a merits defense improperly dressed as a certification argument, and the district court was correct to treat it as such. *See*

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("[M]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Even if other sections of the IRC bear on an employer's reporting duties in the absence of employee disclosures, a jury could still find that an employer who knows its W-2s and 1099s overstate employees' net income—and files them anyway—acts willfully and fraudulently within § 7434(a)'s meaning. The district court was not obligated to resolve that question in Benelux's favor at the certification stage. *See In re Deepwater Horizon*, 739 F.3d 790,798 (5th Cir. 2014).[2]

*iv. The District Court Did Not Abuse its Discretion in Concluding that Damages Issues Do Not Preclude Certification.*

Benelux argues that Plaintiffs offered no class-wide method to prove damages, thus defeating predominance. However, the district court correctly noted that this argument runs headlong into well-settled Supreme Court precedent. (Benelux App'x Tab A at 31). Individualized damages questions are not a bar to class certification under Rule 23(b)(3). *Tyson Foods, Inc.*, 577 U.S. at 453 (citing 7AA C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. § 1778, pp. 123–124 (3d ed. 2005)). This

[2] Moreover, the district court's ruling did not "create a new legal duty foreign to the IRC" (Petition at 14)—when employers know about tip outs, as Benelux did here, they are and have been required to simply produce accurate information returns based on that knowledge. Benelux now accurately tracks the waitstaffs' tips per the corporate representative's testimony. (Supp. App'x Tab 1 at Ex. A, 248:1-249:8).

Court has recognized that "common issues predominate despite the need for individualized damages where 'virtually every issue prior to damages is a common issue.'" *Ibe v. Jones*, 836 F.3d 516, 530 (5th Cir. 2016) (citing *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001)); *see also In re Deepwater Horizon*, 739 F.3d at 816 (upholding finding of predominance despite diverse damages because "even without a common means of measuring damages, [the] common issues [of fact and law] nonetheless predominated over the issues unique to individual claimants."). Following this precedent, the district court certified the class after concluding that virtually every issue prior to damages is a common issue. *Id.*; Benelux App'x Tab A at 30–31. Further, the Fifth Circuit precedent Defendant relies on to support its argument are either distinguishable from the facts and issues here or support the district court's ruling.

For example, in *Prantil v. Arkema, Inc.*, the plaintiffs sought damages for adverse health effects and the diminution of their property values after the defendant failed to heed warnings of Hurricane Harvey's anticipated landfall and continued production of a highly volatile compound that combusts if not refrigerated. 986 F.3d 570, 573 (5th Cir. 2021). As a threshold matter, these facts are highly distinguishable from Plaintiffs' tax fraud damages calculations. Plaintiffs' damages flow from company-wide policies implemented by Defendant to require waitstaff to tip out a certain amount but then refusing to account for the requisite tip-out when reporting

the waitstaffs' income to the IRS.

Those calculations are formulaic, involving reviewing Plaintiffs' tax returns, public federal income tax brackets, and their testimony about Defendant's uniform policy. It is pure math, unlike the *Prantil* plaintiffs' property and health damages that would "turn on potentially nuanced determinations of plaintiffs' "location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals," and which are not inherently quantifiable. *Id*. at 578. Further, there was an open question of whether causation of the *Prantil* plaintiffs' injuries was an issue common to the class or would result in mini-trials—a question not present here. *Id*. at 579; *cf.* Benelux App'x Tab A at 22.

Similarly, in *Ibe v. Jones*, this Court upheld a denial of class certification because the plaintiffs' damages—which flowed from their purchase of Super Bowl XLV tickets in a newly-constructed stadium that lacked sufficient capacity—varied "vastly," unlike Plaintiffs' damages here. 836 F.3d 516, 531 (5th Cir. 2016). Specifically, in *Ibe v. Jones*, the district court declined to certify the class of ticketholders who were relocated to different seats because some relocated ticketholders may not have been relocated to inferior seats and because each unique, relocated seat affected damages in individualized ways. *Id.* at 530. Here, there is no possibility that any class member was better off for Defendants' overreporting of

their taxable income to the IRS. Moreover, Plaintiffs' damages flow from one uniform policy and are susceptible to calculation based on a formula and tax records. There are no issues comparable to the "unique seat" issue in *Ibe v. Jones*. *Id.* at 523.

Moreover, in *Prantil* this Court vacated the order granting class certification because, after the lower court struck the plaintiffs' expert on a *Daubert* challenge, it did not "meaningfully consider how Plaintiffs' claims would be tried" and because of the "lack of analysis or discussion regarding how the district court would administer the trial." 986 F.3d at 578, citing *Madison v. Chalmette*, 637 F.3d 551, 556-57 (5th Cir. 2011) (cleaned up). By contrast, here the district court did adequately grapple with how Plaintiffs' claims would be tried and squarely analyzed how it would administer the trial, in keeping with Fifth Circuit precedent. (Benelux App'x Tab A at 31, 34, citing *Chavez v. Plan Benefit Servs., Inc.*, 108 F4th 297, 318–19 (5th Cir. 2024)).

The district court's sua sponte identification of subclassing and bifurcation[3] reflects exactly the kind of careful, forward-looking case management that Rule 23 envisions—not the "wait-and-see" error Benelux describes. This is also consistent with this Court's ruling in *In re Deepwater Horizon*, which affirmed a grant of class

[3] Defendants claim that by proposing bifurcation of damages from liability as one way to manage class-wide adjudication, the district court certified an issue class under Rule 23(c)(4). Plaintiffs did not move for certification under Rule 23(c)(4) and there is no mention of Rule 23(c)(4) in the district court's order. Moreover, Defendants have cited no authority for the proposition that bifurcation of damages necessitates a (c)(4) issues class. Plaintiffs therefore give no weight to this assertion, and neither should this Court.

certification where, "even without a common means of measuring damages," the district court "explained 'the phased trial structure selected by the Court. . .reflected the central importance of common issues to the case.'" 739 F. 3d at 816–17 (cleaned up). In *In re Deepwater Horizon*, this Court found that the district court did not abuse its discretion in deciding, as is the case here, that "[t]he phased trial of common issues in this case would undoubtedly prevent the repetitious re-litigation of these common issues by each individual claimant in thousands of separate lawsuits." *Id.*; *cf.* Benelux App'x Tab A at 29 ("The liability phase of Plaintiffs' §7434 claim, if not the damages phase, is clearly fit for a class-wide determination, and it would be far superior to requiring approximately 100 class members to pursue their claims individually").

**d. Petitioners Failed to Show the District Court's Decision Granting Class Certification Would Be Case-Dispositive.**

Defendants do not bother to argue that their Petition merits interlocutory review for the other permissible basis –because the certification decision "is likely dispositive of the litigation"—because it does not. *Seeligson*, 804 Fed. Appx. at 305. The three Plaintiffs have been and will continue to pursue their §7434 claims at issue here, regardless of whether the class is certified, just as they are continuing to pursue their claims under the FLSA, which were unaffected by the district court's class

certification ruling, and under state contract law, which the district court declined to certify.

## II. Petitioners Forfeited Several of Their Unavailing Arguments by Failing to Timely Raise Them Below.

As a threshold matter, several of the arguments Benelux advances in its Petition were not raised with sufficient specificity before the district court to preserve them for appellate review. These newly raised criticisms also do not warrant interlocutory appeal.

Arguments not raised in district court are forfeited on appeal. *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 426 (5th Cir. 2024); *see also CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 325 (5th Cir. 2023) (argument is preserved for appeal only if presented to the district court with sufficient specificity to permit a ruling); *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal.").

In particular, Benelux's argument that Plaintiffs lack standing was not presented to the district court, nor was its argument that 26 U.S.C. § 7422 disallows the recovery of overpaid taxes as actual damages under 26 U.S.C. § 7434. This Court should properly disregard these untimely arguments or, at minimum, afford them no weight in evaluating whether interlocutory review is warranted.

**a. Plaintiffs Have Adequately Demonstrated Article III Standing.**

The district court did not err in its standing analysis, and Benelux's argument on this point is speculative and mischaracterizes the record. Respondents Montes and Horne allege—and the district court accepted for certification purposes—that Benelux's W-2s overstated their tip income, causing them to pay more in taxes than they owed. That allegation satisfies *TransUnion*'s "concrete" and "particularized" injury requirement. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021). "Physical or monetary harms readily qualify as concrete injuries under Article III." *TransUnion* at 414 (citing *Spokeo, Inc.* v. *Robins*, 578 U. S. 330, 340 (2016)). Here, Plaintiffs undoubtedly have a monetary harm to show from Defendant's overreporting of their income to the IRS.[4] Indeed, Defendants cite to no authority to show that overtaxation is not a concrete, particularized injury. The only case Defendants do cite holds the opposite—that a plaintiff had standing under §7434 on the year she alleged she was overtaxed, but not for the year that she did not allege she was overtaxed. *Schmelzer v. Animal Wellness Ctr. of Monee, LLC*, No. 18-cv-01253, 2022 U.S. Dist. LEXIS 136044, at *31–33, 130 A.F.T.R.2d (RIA) 2022-5267

[4] Indeed, the district court certified a narrower class than sought to reduce the likelihood of uninjured members—limiting the class to waitstaff who worked at Benelux during the relevant period *and* received information returns, thereby removing approximately 50 potentially uninjured members. (Benelux App'x Tab A at 20).

(N.D. Ill. Aug. 1, 2022).

Benelux's argument regarding Plaintiff Horne's Schedule 1 adjustment proves too much. The fact that Horne attempted to partially mitigate her injury on her own tax return does not negate the underlying wrong; it goes, at most, to calculation of damages at trial. And this issue also identifies additional actual damages for Plaintiff Horne, who had to hire a tax professional to propose a solution to the problem that Benelux created. And Benelux's reliance on *Zimmerman v. City of Austin, Tex.*, 881 F.3d 378, 389 (5th Cir. 2018) to characterize Montes's failure to self-adjust as a "self-inflicted injury" misses the mark entirely. In *Zimmerman*, the political candidate's standing hinged on his not seeking speculative campaign donations so as not to run afoul of local campaign donation limits. *Id.* This is a far cry from Montes's reliance on what her employer reported and reflects reasonable conduct—not voluntary forfeiture of injury.

Further, the logical extension of Defendants' argument—either you lose standing by attempting to correct a false return or you lose standing if you do not—would leave no one with standing to bring §7434 claims and eviscerate the statute. The district court's standing analysis was adequate and does not independently warrant Rule 23(f) review.

**b. The Plain Language of §7434 Permits Actual Damages, and Offers a Remedy for Overtaxation.**

Relating to the "correct amount" issue described above, Defendants argue it was error for the district court to treat that as an issue to adjudicate at the damages stage because §7434 does not permit Plaintiffs to recover their damages from being overtaxed. This is another instance where Defendants ignore the plain language of §7434, which supports Plaintiffs' claims, and concoct an alternate theory unsupported by law.

Section 7434(b) straightforwardly provides a "defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of—(1) any actual damages sustained by plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing)." This leaves no room for interpretation—and Defendant does not and cannot explain what Congress might mean by "actual damages" in §7434 if not the excess tax liability Plaintiffs faced.

Moreover, §7422 is a vehicle for taxpayers to sue the U.S. Government, not private employers. 26 U.S.C. § 7422(f)(1). Finally, Defendants' reliance on an out-of-circuit district court's holding to support that theory was misplaced. In *Eisele v. Home Depot U.S., Inc.*, the plaintiffs sued for unpaid wages and, when the defendant paid their backwages and pre-judgment interest, it classified the interest as W-2 wages. No. 3:20-cv-1740-AB, 2026 LX 189106, at *3 (D. Or. Mar. 17, 2026). There,

the plaintiffs sued under §7434 to recover the amounts of FICA taxes that were incorrectly withheld and paid to the IRS from their prejudgment interest payments. *Id*. at *23. This case is inapposite because in *Eisele*, the plaintiffs were trying to recoup a portion of their settlement proceeds that may or may not have been improperly paid to the IRS, whereas here, Plaintiffs were taxed on income they did not actually receive because of Defendant's companywide tip-out policy.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendants' Petition for Permission to Appeal the Order Granting Class Certification.

Respectfully submitted,

*/s/ Ryan O. Estes*
**Caitlin Boehne**
Texas Bar No. 24075815
caitlin@kaplanlawatx.com
**Ryan O. Estes**
Texas Bar No. 24120586
restes@kaplanlawatx.com

KAPLAN LAW FIRM
2901 Bee Cave Rd., Ste. G
Austin, Texas 78746
Tel.: (512) 814-7348
Fax: (512) 692-2788
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Ryan O. Estes*

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

c. **This document complies with the typeface volume limitation of Fed. R. App. P. 5(c)(2) and the word limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):**
This document contains **21 pages and 4,916** words.

d. **This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:**
This document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14-point Times New Roman font style.

Dated: April 23, 2026

*/s/ Ryan O. Estes*
Attorney for Respondents-Plaintiffs

# APPENDIX

| **Tab** | **Description** |
|---|---|
| 1 | Plaintiffs' Motion for Class Certification and Exhibits (ECF No. 56 in the District Court) |
| 2 | Plaintiffs' Reply In Support of Motion for Class Certification and Exhibits (ECF No. 61 in the District Court) |