Case No. 26-90009

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

MAGGIE MONTES, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED; BREONA HORNE, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,

*Plaintiffs-Respondents*,

*v.*

BENELUX CORPORATION, doing business as PALAZIO MEN'S CLUB; ANTHANASES STAMATOPOULOS; and MICHAEL MEALEY,

*Defendants-Petitioners.*

---

On Petition for Permission to Appeal from the United States District Court
for the Western District of Texas, Austin Division
Civil Action No. 1:24-cv-00276-RP
Hon. Robert Pitman, Presiding

---

## PETITIONER'S REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f)

---

William X. King
Emily C. Freeman
MCDOWELL HETHERINGTON LLP
*Counsel for Petitioner*
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Tel.: (713) 221-3840
Fax: (713) 337-8850
william.king@mhllp.com
emily.freeman@mhllp.com

# TABLE OF CONTENTS

Table of Authorities ........ iii
Reply ........ 1
Argument ........ 2
I. The Certification Decision Hinges on the Novel and Unsettled Question ........ 2
  A. Section 7434 liability turns on IRC reporting provisions—not employer knowledge alone. ........ 3
  B. Palazio's "policy" does not neutralize the need for resolving the unaddressed question. ........ 4
II. Respondents' Undemonstrated Article III Standing Warrants Review. ........ 6
  A. Respondents' alleged "overtaxation" injury remains unsubstantiated. ........ 7
  B. Section 7422's jurisdictional bar precludes recovery of "excess tax" payments. ........ 9
III. Vague Assurances Are Not Class-Wide Proof of Damages or § 7434(e) "Correct Amount" Findings. ........ 10
Conclusion ........ 12
Certificate of Compliance ........ 14
Certificate of Service ........ 15

# TABLE OF AUTHORITIES

**CASES**

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ........ 2

*Celeski v. Tom Brown's Rest. at Madison LLC*,
No. 5:22-CV-01600-HNJ, 2025 WL 2741829 (N.D. Ala. Mar. 27, 2025) ........ 11

*Cleven v. Mid-Am. Apartment Communities, Inc*.,
20 F.4th 171 (5th Cir. 2021) ........ 2

*Doe v. Tangipahoa Par. Sch. Bd*.,
494 F.3d 494 (5th Cir. 2007) ........ 6, 7

*Doherty v. Turner Broadcasting Systems, Inc.*,
72 F.4th 324 (D.C. Cir. 2023) ........ 3

*Eisele v. Home Depot U.S.A., Inc*.,
No. 3:20-CV-1740-AB, 2026 WL 752429 (D. Or. Mar. 17, 2026) ........ 9

*Pemberton v. Nationstar Mortgage LLC*,
No. 14-CV-1024-BAS-WVG, 2017 WL 4759018 (S.D. Cal. Oct. 20, 2017) ........ 8

*Regents of Univ. of California v. Credit Suisse First Boston (USA), Inc*.,
482 F.3d 372 (5th Cir. 2007) ........ 2, 3

*Sampson v. United Services Auto. Ass'n*,
83 F.4th 414 (5th Cir. 2023) ........ 2

*Schmelzer v. Animal Wellness Ctr. of Monee, LLC*,
No. 18-CV-01253, 2022 WL 3026911 (N.D. Ill. Aug. 1, 2022) ........ 7

*Smith v. Bank of Am., N.A.*,
679 Fed. Appx. 549 (9th Cir. 2017) ........ 8

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........ 11

*United States v. Clintwood Elkhorn Min. Co*.,
553 U.S. 1 (2008) ........ 9

*United States v. Haimowitz*,
404 F.2d 38 (2d Cir. 1968) ........ 4

*Virginia House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019) ........ 6

*Wiggins v. Jefferson Einstein Hosp.*,
No. 24-2095, 2024 WL 5074894 (3d Cir. Dec. 11, 2024) .................................. 10

**STATUTES**

26 U.S.C. § 104(a)(1) .................................................................................... 3

26 U.S.C. § 6001 ............................................................................................. 6

26 U.S.C. § 6041 ......................................................................................... 4, 5

26 U.S.C. § 6050H .......................................................................................... 8

26 U.S.C. § 6051 ............................................................................................. 6

26 U.S.C. § 6053(a) ................................................................................. 4, 5, 6

26 U.S.C. § 7422(a) ..................................................................................... 1, 9

26 U.S.C. § 7434 ................................................................................... *passim*

§ 7434(b) ................................................................................. 1, 8, 9, 10

§ 7434(e) ........................................................................................... 1, 10

**RULES**

Fed. R. Civ. P. 23(b)(3) ............................................................................ 1, 11

Fed. R. Civ. P. 23(f) ..................................................................................... 1, 4

# REPLY

The district court certified a Rule 23(b)(3) class on an expressly "unsettled" question of tax law affecting whether 26 U.S.C. § 7434 liability turns on employee-side, class-member-by-class-member reporting duties. But the district court erred further, certifying a class helmed by representatives who proposed no methodology for computing their "entirely unclear" § 7434(b) actual damages or § 7434(e)'s "correct amount" requirement, and who lack Article III standing given reliance on an alleged and undemonstrated "overtaxation" injury that runs headlong into § 7422(a)'s jurisdictional bar.

Respondents offer no justification for these errors. They ignore the statutory framework governing their § 7434 claim, use rhetoric-laden dismissals, and cite an 'overreporting policy' extrapolated from the narrative and duties underlying their individual Fair Labor Standards Act claims. And when it comes time to discuss intertwined standing, damages, and "correct amount" problems, Respondents brush them aside with "pure math" sloganeering. But math requires inputs, and Respondents offer none.

Respondents' opposition reinforces what Palazio's petition shows—Rule 23(f) review is warranted to correct these errors.

## ARGUMENT

### I. The Certification Decision Hinges on the Novel and Unsettled Question.

Respondents observe that the word "unsettled" appeared solely in the district court's summary judgment ruling. That is the point—the district court incorrectly cast the issue aside as a "merits" inquiry, leaving it unaddressed and unresolved in the Rule 23 analysis.

"Rule 23 is not a context where courts must assiduously separate certification from merits issues; they will often be deeply intertwined." *Sampson v. United Services Auto. Ass'n*, 83 F.4th 414, 421 (5th Cir. 2023). A 'merits inquiry' asks whether a plaintiff is *likely to prove* her claim, whereas Rule 23's focus is on *how* she may prove her claim class-wide. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

Applying the merits label is misdirection; resolution of a legal question that goes to the foundation and elemental structure of the claim itself is mandatory where it determines a claim's susceptibility to aggregate adjudication. *See Regents of Univ. of California v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 382-93 (5th Cir. 2007) (reviewing "deceptive act" and "scheme" liability theory that determined whether reliance required individualized proof); *see, e.g.*, *Cleven v. Mid-Am. Apartment Communities, Inc*., 20 F.4th 171, 177 (5th Cir. 2021) (granting review of defendant's challenge to "the district court's construction of section 92.019,

[because] the proper construction is a necessary antecedent to the predominance issue.").

Respondents express concern that Palazio's "novel" reading of § 7434 could, in their view, allow Palazio to "evade liability." Resp. at 5. That is a reason to *grant* permission to appeal. As this Court once said, "[i]f the certification decision is so entangled with the merits as to make interlocutory appeal dispositive of the substantive litigation, it is incidentally but perhaps happily more likely that the legal merit and practical outcome … will coincide." *Regents*, 482 F.3d at 393.

**A. Section 7434 liability turns on IRC reporting provisions—not employer knowledge alone.**

Respondents believe reading § 7434 in harmony with the IRC's reporting provisions has "no basis in caselaw whatsoever." Resp. at 5. That is wrong. *Doherty v. Turner Broadcasting Systems, Inc.*, 72 F.4th 324 (D.C. Cir. 2023) illustrates that § 7434 falsity is measured against applicable IRC provisions—not simply by comparing take-home pay with W-2 figures. In *Doherty*, the W-2s "accurately reflect[ed] the total amounts" the plaintiff was paid, *id.* at 326, yet the D.C. Circuit reversed summary judgment granted for the employer because falsity turned on a substantive IRC provision excluding disability payments from gross taxable income. *Id.* at 330-31 (citing 26 U.S.C. § 104(a)(1)).

Unlike *Doherty*—where falsity turned on *employer*-side choices to exclude or

include disability payments—the edifice of the IRC's tip-reporting regime is built on *employee*-furnished information. That has direct consequences for Rule 23 because whether each class member fulfilled her 26 U.S.C. § 6053(a) obligation to report gross or net tip income determines what Palazio knew, what data it was required to report, and whether what it reported was true or false. Resolving how individualized reporting obligations interact with § 7434 is exactly the type of open legal question that Rule 23(f) review is meant to address.

**B. Palazio's "policy" does not neutralize the need for resolving the unaddressed question.**

Respondents insist that Palazio's alleged "policy," described as requiring tip-outs and "refusing to account for the requisite tip-out when reporting," Resp. at 13-14, is sufficient to yield class-wide liability under § 7434. Setting aside the overstatement that Palazio affirmatively "refused" to account for tip-outs, the bases for Respondents' "policy" arguments highlight review-worthy issues.

First, Respondents conjure non-existent duties, claiming that "when employers know about tip outs … they are and have been required to simply produce accurate information returns based on that knowledge." Resp. at 12, n.2. This contention has no basis in the IRC. The general income reporting statute—26 U.S.C. § 6041—is "intended to help the government locate and check upon recipients of income and the amounts they receive." *United States v. Haimowitz*, 404 F.2d 38, 40

(2d Cir. 1968). But Congress declared that this tax-monitoring duty "***shall not*** apply to tips with respect to which section 6053(a) … applies." 26 U.S.C. § 6041(e) (emphasis added).

Second, Respondents frame Palazio's alleged "policy" as "fail[ing] to document information" and "refusing to account" for tip-outs based on the corporate representative's "mistake" testimony. Even setting aside the inferential leaps needed to conclude that Palazio had a "policy" of affirmatively "refusing" to account for net tip income, its reliance on charge receipts is *consistent* with the IRC: the "only records" an employer must keep "in connection with charged tips shall be" charge receipts and copies of § 6053(a) statements that employees have an independent duty to furnish.

Third, the district court acknowledged this statutory interplay, stating that "Palazio arguably had no choice but to furnish an information return without the information Plaintiffs were statutorily required to provide." App. A at 8. But that premise disappeared in the certification analysis. Having "no choice" but to report tip income based on accurate charge tip receipt data (where no § 6053(a) statements are provided) not only belies the idea of a "uniform policy," but also shifts proof of willfulness and falsity into member-specific questions of what Palazio knew (if anything) about each individual's actual tip income before filing information returns.

Respondents' "discarded tip statements" analogy, Resp. at 8, underscores the point because it depends on the exact legal premise the district court rejected as irrelevant. If an employer receives § 6053(a) written statements, it has a duty to maintain and relay the employee-reported information in W-2s. *See* 26 U.S.C. §§ 6001, 6051, 6053(a). In that scenario, discarding tip income statements or ignoring the information conveyed when reporting *could* be actionable, and a policy of doing so would support class certification. While Respondents gesture at that outcome, they lack the factual and legal backing to sustain it here.

## II. Respondents' Undemonstrated Article III Standing Warrants Review.

Respondents' claim that Palazio "forfeited" its standing challenge is incorrect. A lack of *constitutional* standing can never be forfeited or waived. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662–63 (2019); *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496 n.1 (5th Cir. 2007). Respondents' representations are also incorrect as a matter of fact; Palazio raised class members' standing in the certification briefing and specifically challenged Respondents' individual standing on summary judgment.[1]

[1] Resp. Appx. Vol. 4 at 144 ("Defendant raises the question of whether there are indeed some uninjured class members"); (Dkt. 68, § I.D) (devoting an entire section to "Plaintiffs Lack Standing to Sue").

### A. Respondents' alleged "overtaxation" injury remains unsubstantiated.

"Standing to sue must be *proven*, not merely *asserted*, in order to provide a concrete case or controversy[.]" *Doe*, 494 F.3d at 496-97 (emphasis added). Respondents' sole theory of injury is that if Palazio overreported their tip income on an information return, then Respondents necessarily overpaid taxes. The problem is not with Respondents' asserted theory, but their failure to *demonstrate* that they *did* pay taxes not owed.

This matter is far beyond the pleadings stage. In *Schmelzer v. Animal Wellness Ctr. of Monee, LLC*, the court held that mere allegations of a false information return, "without any specifics of the actual damages incurred," were insufficient to confer standing at the pleadings stage. No. 18-CV-01253, 2022 WL 3026911, at *11 (N.D. Ill. Aug. 1, 2022). If calculating overpaid taxes is a matter of mere arithmetic, then showing injury should not be difficult after full discovery, yet Respondents remain silent.

Respondents' short explanation of their tax returns proves the point, as does their appendix; Horne confirmed the accuracy of her tax returns—which

incorporated data from her W-2s and 1099s[2]—making it impossible to claim that she "filed erroneous tax returns in reliance on the allegedly erroneous form[s]" and suffered overtaxation as a result. *Smith v. Bank of Am., N.A.*, 679 Fed. Appx. 549, 550 (9th Cir. 2017) (addressing 26 U.S.C. § 6050H).

Respondents' fallback that Horne was injured because she "had to hire a tax professional," Resp. at 19, does not rescue standing. "Accountancy fees incurred to file an *amended* tax return could be a sufficient injury-in-fact for Article III standing." *Pemberton v. Nationstar Mortgage LLC*, No. 14-CV-1024-BAS-WVG, 2017 WL 4759018, at *4 (S.D. Cal. Oct. 20, 2017) (emphasis added). But hiring a tax preparer mid-litigation to file *initial* 1040s for prior years discharges a preexisting filing obligation; it is not a "cost[] attributable to resolving deficiencies asserted as a result of" Palazio's information returns. 26 U.S.C. § 7434(b)(1).

Finally, Respondents trumpet the fact that the district court "reduce[d] the likelihood of uninjured members" by repairing their class definition to include only those who "receive[d] information returns." Resp. at 18, n.4. This stray observation reveals a deeper problem: the "[m]ere receipt of an erroneous form, without more, is insufficient to establish injury-in-fact." *Smith*, 679 Fed. Appx. at 550. Thus, the

[2] *See* Resp. Appx. Vol. 4, Exhibit 4 at 159 (232:19-23) ("Q.… So for your 2019 through 2023 tax returns, these contain what you believe are accurate figures as far as the amounts reported for your tips; right? A. Yes.").

district court certified a class without examining whether it contains individuals who—like Respondents themselves—suffered no injury whatsoever. That omission alone warrants interlocutory review.

### B. Section 7422's jurisdictional bar precludes recovery of "excess tax" payments.

After "vaguely" arguing to the district court what damages they seek, App. A at 33, Respondents now announce their reliance on "excess tax liability" to support both standing *and* actual damages under § 7434(b). That theory is jurisdictionally barred. *See* 26 U.S.C. § 7422(a).

The Supreme Court has explained that § 7422 is an "expansive" jurisdictional roadblock that forecloses any suit in "'any court' to recover 'any internal revenue tax' or 'any sum' alleged to have been wrongfully collected 'in any manner.'" *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 7 (2008). "[A] taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected" may sue the government, but only after filing a refund claim with the IRS. *Id.* at 4.

The reason is basic: § 7434 authorizes recovery from a *private* defendant, while excess taxes are paid to the *government*. Courts have accordingly applied § 7422(a)'s bar to plaintiffs who seek what amounts to a tax refund from their employers. *See Eisele v. Home Depot U.S.A., Inc.*, No. 3:20-CV-1740-AB, 2026 WL 752429, at *8 (D. Or. Mar. 17, 2026) (collecting cases).

Respondents' rejoinder—that Palazio "cannot explain what Congress might mean by 'actual damages' in § 7434 if not the excess tax liability," Resp. at 19—is answered in the statute itself: "actual damages" include "any costs attributable to resolving deficiencies asserted as a result of such filing[.]" 26 U.S.C. § 7434(b)(1). Costs of resolving a tax deficiency are not the tax payment itself, but Respondents want to conflate the two because they have nothing else.

Simply put, if Respondents wish to recover under their tax-overpayment theory, "[r]ather than suing [their] employer, § 7422 required [Respondents] to file a claim for refund or credit with the IRS and then, if necessary, to sue the United States." *Wiggins v. Jefferson Einstein Hosp.*, No. 24-2095, 2024 WL 5074894, at *2 (3d Cir. Dec. 11, 2024).

## III. Vague Assurances Are Not Class-Wide Proof of Damages or § 7434(e) "Correct Amount" Findings.

Respondents do little to square two interrelated defects: the district court's concern that "it is entirely unclear" how they propose to calculate actual damages and the independent requirement under § 7434(e) that a court must also "include a finding of the correct amount" that should have been reported. 26 U.S.C. § 7434(e).

While Respondents did not need to prove the "correct amount" at certification, they did need to show *how* those mandatory findings could be made class-wide. Respondents offer this Court the same conclusory assurances that all

calculations are "formulaic" and a matter of "pure math." Resp. at 14. Those empty offerings reflect the record the district court recounted: "the amount[s] they tipped out varied depending on the day," were "different every night," "depend[ed] on how much help we got from managers," "would range each shift," "kind of depend[ed] on how much you were making that night," and was "pretty much all done verbally." App. A at 33.

Since coherent proof is absent, Respondents resort to reciting that individualized computations are not a bar to Rule 23(b)(3) certification. However, the case cited for this proposition—*Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442 (2016)—exposes what is lacking here. In *Tyson*, the plaintiffs at least offered a "representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records" as required under FLSA. *Id.* at 456. The representative "study" at issue was allowable because it could have sustained a jury finding "if it were introduced in each employee's individual action." *Id.* at 459. No study exists that will facilitate "correct amount" findings—or damages for that matter.

Last, Respondents do not even attempt to invoke one of the cases cited in the district court's order because it *also* shows what is lacking. In *Celeski v. Tom Brown's Rest. at Madison LLC*, variable damage calculations did not defeat predominance because, unlike this case, the employer used an electronic system that automatically

calculated and recorded each class member's percentage-based payments to a tip pool "across the board[.]" No. 5:22-CV-01600-HNJ, 2025 WL 2741829, at *2 (N.D. Ala. Mar. 27, 2025). The defendant's "uniform calculation of deducting the total of recorded tip-pool contributions from Plaintiffs' reported income" could be substantiated through closing receipts, "regularly generate[d]" spreadsheets, and "Form 4070's or other tip income documentation tipped employees provided." *Id.* at *16.

No comparable evidentiary infrastructure exists here. Without that proof, the district court's predominance finding rested on Respondents' bare representations, not rigorous analysis.

## CONCLUSION

Petitioner Benelux Corporation respectfully asks the Court to permit interlocutory review under Rule 23(f) so that these defects may be fully briefed and resolved.

Respectfully submitted,

MCDOWELL HETHERINGTON LLP

*/s/ William X. King*
William X. King
Texas Bar No. 24072496
Emily C. Freeman
Texas Bar No. 24126741
1001 Fannin Street, Suite 2400

Houston, Texas 77002
Tel.: (713) 221-3840
Fax: (713) 337-8850
william.king@mhllp.com
emily.freeman@mhllp.com
**COUNSEL FOR PETITIONER**

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 5(c) and 32(g), the undersigned counsel for Petitioner certifies that this reply:

(i) complies with the word limit of Fed. R. App. P. 27(d)(2)(C) because it contains 2,501 words, including footnotes and excluding the parts exempted by Fed. R. App. P. 32(f); and

(ii) complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word for Office 365 in 14-point font size and Equity Text A type style, except for 12-point footnotes.

Dated: April 30, 2026

*/s/ William X. King*
William X. King

## CERTIFICATE OF SERVICE

I certify that on April 30, 2026, the foregoing reply was filed and served via the Court's CM/ECF filing system upon the following counsel of record for Respondents:

Ryan Estes
Caitlin Boehne
Kaplan Law Firm
2901 Bee Cave Road, Suite G
Austin, Texas 78746
Tel.: (512) 814-7348
Fax: (512) 692-2788
restes@kaplanlawatx.com
cboehne@kaplanlawatx.com
**COUNSEL FOR RESPONDENTS**

*/s/ William X. King*
William X. King